IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

AIDRUS ISMAEL SHARIF, D/B/A HAYAT FOOD
MART II                                                                                          PLAINTIFF

VS.                                                                CIVIL ACTION NO.: 4:16-cv-67-JMV

UNITED STATES OF AMERICA                                                           DEFENDANT

## ORDER

This matter is before the court on the Defendant United States of America's Motion for Summary Judgment [17], filed on October 31, 2016. The court has considered the motion and accompanying brief, along with the responses and reply. For the reasons detailed herein, the motion shall be granted.

## Introduction

In January of 2016, Hayat Food Mart, II, which is located at 635 N Broadway Street in Greenville, Mississippi and owned by Aidrus Ismael Sharif, was permanently disqualified from the Supplemental Nutrition Assistance Program (SNAP). SNAP benefits are administered by the United States Department of Agriculture (USDA), Food and Nutrition Service (FNS). SNAP's mission is "to promote the general welfare, to safeguard the health and well-being of the nation's population by raising the levels of nutrition among low-income households." 7 U.S.C. § 2011. "The assistance provided is focused on increasing the food purchasing power of eligible households by supplementing the funds families have to spend on food with SNAP benefits, to purchase eligible food items at authorized retail stores." [17]-3 Declaration of Marchee Briant at ¶ 7.

The FNS regional office shall disqualify a retail food store permanently if the store has engaged in the trafficking of food stamps. *See* 7 C.F.R. § 278.6(a), 278.6(e)(1). "Trafficking

1

means the buying, selling, stealing, or otherwise effecting an exchange of SNAP benefits issued and accessed via Electronic Benefit Transfer (EBT) cards, card numbers and personal identification numbers (PINs), or by manual voucher and signature, for cash or consideration other than eligible food, either directly, indirectly, in complicity or collusion with others, or acting alone." 7 C.F.R. § 271.2. Food stamp trafficking unquestionably undermines the goals of the food stamp program. *Huggins v. United States*, 858 F. Supp. 2d 694, 696 (N.D. Miss. 2012); *see* H.R. REP. NO. 271, 99th Cong. (1st Sess.), *reprinted in* 1985 U.S.C.C.A.N. 1103, 1260; S. REP. NO. 504, 97th Cong. (2d Sess.), *reprinted in* 1982 U.S.C.C.A.N. 1641, 1700–02; *see also* [17]-3 Declaration of Marchee Briant at ¶ 15 ("Trafficking defrauds the American taxpayer and Congress has repeatedly emphasized the importance of combating fraud in the program. Fraudulent retailers are to be excluded or removed from SNAP to strengthen its integrity."). The government electronically monitors participating retailers' EBT transactions, conducts periodic reviews of retailers, and initiates investigations of stores when suspicious transactions occur. [17]-3 Declaration of Marchee Briant at ¶ 16.

A retail food store's disqualification from participation in the program "shall result from a finding of a violation on the basis of evidence that may include facts established through on-site investigations, inconsistent redemption data, evidence obtained through a transaction report under an electronic benefit transfer system, or the disqualification of a firm from the Special Supplemental Nutrition Program for Women, Infants and Children (WIC)." 7 C.F.R. § 278.6(a). "When trafficking is found, unless the retailer food store qualifies for a civil monetary penalty, the penalty is permanent disqualification from SNAP." [17]-3 Declaration of Marchee Briant at ¶ 17 (citing 7 U.S.C. § 2021(b)(3); 7 C.F.R. § 278.6(e)(1)(i)).

Aidrus Ismael Sharif owns Hayat Food Mart, II, which is a convenience store-gas station of approximately 1,000 square feet with 1,200 square feet storage area. [19] A.R. at 90. On August 28, 2013, and September 7, 2015, FNS contractors visited Hayat Food Mart, II to observe the nature and scope of Hayat's operation, stock, and facilities. [19] A.R. at 9-50. Between May 2015 and October 2015, FNS analyzed the EBT transaction records at Hayat Food Mart, II because Hayat Food Mart, II had appeared on the EBT ALERT system as having met patterns consistent with possible EBT trafficking violations. *Id.* at 89.

On December 15, 2015, the USDA sent a letter to Plaintiff accusing him of "trafficking" as defined in § 271.2 of the SNAP regulations (the Charge Letter). *Id.* at 123-25. The USDA also included a copy of the records of the subject EBT transactions. *Id.* at 123-50, [20] A.R. at 151-59. The Charge Letter informed Plaintiff that FNS charged Hayat Food Mart, II with committing 1,145 discrete violations of the SNAP regulations between May and October of 2015.[1] *Id.* In a letter dated December 18, 2015, Plaintiff responded, denying the trafficking charges. [20] A.R. at 162-63. Following a review of Plaintiff's response, the USDA sent Plaintiff a decision letter which included its determination that based upon the evidence available, the violations did occur. *Id.* at 170-79. As a result, Plaintiff was permanently disqualified from participating in SNAP. *Id.*

In a letter dated January 14, 2016, Plaintiff responded through an attorney and requested an administrative review of the permanent disqualification. *Id.* at 187. On January 19, 2016, FNS granted Plaintiff's request for administrative review. *Id.* at 194. On March 8, 2016, FNS issued a Final Agency Decision rejecting Plaintiff's arguments and position and affirming the permanent

---

[1] Specifically, the Charge Letter identified: 41 discrete violations in the category of "multiple purchase transactions were made too rapidly to be credible," also referred to as the B1 scan ([19] A.R. at 126-30); 138 discrete violations in the category of "multiple transactions were made from individual benefit accounts in unusually short time frames," also referred to as the B2 scan ([19] A.R. at 131-42); and 966 discrete violations in the category of "excessively large purchase transactions," also referred to as the F scan ([19] A.R. at 143-150; [20] A.R. at 151-59).

disqualification penalty. *Id.* at 258-72. Accordingly, Plaintiff has exhausted all administrative remedies and seeks judicial review as authorized by 7 C.F.R. § 2023.

## **Standard of Review**

"Cases arising under the Food Stamp Act, 7 U.S.C. §§ 2011 *et seq.,* may be resolved in the district court by summary judgment where there are no genuine issues of material fact." *Huggins*, 858 F. Supp. 2d at 698 (citing *Cullen Drive–In Grocery v. Block,* 778 F.2d 1141, 1142 (5th Cir. 1985)). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Weaver v. CCA Indus., Inc.,* 529 F.3d 335, 339 (5th Cir. 2008).

In deciding whether a fact issue has been created, courts must view the evidence in the light most favorable to the non-moving party. *See Haverda v. Hays Cnty., 723 F.3d 586, 591* (5th Cir. 2013). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322. "'The mere existence of a scintilla of evidence in support of the plaintiffs position will be insufficient' to preclude summary judgment; instead, 'there must be evidence on which the jury could reasonably find for the plaintiff.'" *Huggins*, 858 F. Supp. 2d at 698 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986)). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.,* 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile,* 10 F.3d 1093, 1097

(5th Cir. 1993); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). "It is well settled in the Fifth Circuit that 'the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'" *Huggins*, 858 F. Supp. 2d at 698 (quoting Little, 37 F.3d at 1075).

A suit brought pursuant to 7 U.S.C. § 2023 "shall be a trial *de novo* by the court in which the court shall determine the validity of the questioned administrative action in issue." 7 U.S.C. § 2023(a)(15). *De novo* review is broader than the review standard under the Administrative Procedure Act. *Huggins*, 858 F. Supp. 2d at 697; *Modica v. United States,* 518 F.2d 374, 376 (5th Cir. 1975). The Administrative Procedure Act provides that: "To the extent necessary to the decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706. "*De novo* review of an agency decision encompasses more, 'requir[ing] the district court to examine the entire range of issues raised, and not merely to determine whether the administrative findings are supported by substantial evidence.'" *Huggins*, 858 F. Supp. 2d at 697; *Modica,* 518 F.2d at 376. "The court must reach its own factual and legal conclusions based on the preponderance of the evidence, and should not limit its consideration to matters previously dealt with in the administrative proceedings." *Id.* (citing *Ruhee M., Inc. v. United States,* 2006 WL 1291356, at *2 (S.D. Tex. May 5, 2006)).

"The aggrieved party bears the burden of establishing the invalidity of the administrative action by a preponderance of the evidence." *Id.*; *Redmond v. United States,* 507 F.2d 1007, 1012 (5th Cir. 1975). The aggrieved party "may offer any relevant evidence available to support his case, whether or not it has been previously submitted to the agency, and the agency itself may

offer any evidence available to support its action, whether or not in the administrative record." *Id*. "If the court determines that such administrative action is invalid, it shall enter such judgment or order as it determines is in accordance with the law and the evidence." 7 U.S.C. § 2023(a)(16).

The court's review of sanctions under the Food Stamp Act is not as broad as its review of the underlying factual basis of the fact of violation. *Goodman v. United States,* 518 F.2d 505, 511-12 (5th Cir. 1975). "Judicial review of a sanction imposed under the Food Stamp Act is limited to the determination of whether the sanction is valid; a sanction is valid as long as it is not 'arbitrary and capricious,' that is, 'unwarranted in law or without justification in fact.'" *Huggins*, 858 F. Supp. 2d at 697; *see also Butz v. Glover Livestock Comm'n Co.,* 411 U.S. 182, 185-89 (1973); *Goodman,* 518 F.2d at 511-12. "The district court decides only whether the agency's interpretation was plainly erroneous or inconsistent with its own regulations; otherwise, the agency's construction of its own regulations is controlling." *Id.* at 697-98; *Silwany–Rodriguez v. INS,* 975 F.2d 1157, 1160 (5th Cir. 1992).

Notably, courts have frequently affirmed the disqualification of retail stores based on the statistical analysis of an EBT transaction report. *See Kingway Supermarkets, Inc. v. United States*, 545 F. Supp. 2d 613, 617 (S.D. Tex. 2008) (summary judgment granted – "the food stamp regulations explicitly state that a firm may be disqualified on the basis of evidence obtained through a transaction report); *Idias v. United States*, 359 F.3d 695, 696-67 (4th Cir. 2004) (EBT data sufficient to establish trafficking); *Alkabash v. United States*, 733 F. Supp. 2d 929, 937-98 (W.D. Tenn. 2010) (relying on multiple EBT transactions in short period, high dollar values, and single transactions substantially depleting monthly benefits); *African Grocery Store v. United States*, 2008 WL 782731 (E.D. Mo. Mar. 20, 2008) (relying on 32 same-cents/even dollar sales, 85 sales in excess of $200.00, and 17 sales in impossibly short period of time); *Kahin v. United*

*States*, F. Supp. 2d 1299, 1303-04 (S.D. Ca. 2000) (relying on high value sales, multiple same-cents figures).

## Analysis

### A. De novo factual review

Pursuant to 7 U.S.C. § 2023(a)(15), the court will conduct a *de novo* review of the agency's determination that Plaintiff engaged in trafficking of SNAP benefits. Plaintiff continues to adamantly deny engaging in trafficking. [22]-1 Affidavit. However, the court must consider the evidence before it and determine if there exists a genuine issue of material fact as to the validity of the FNS's determination of trafficking.

#### 1. The EBT ALERT scans

The B1 scan measures rapid and repetitive transactions in a short period of time and is indifferent as to whether the transactions were made by the same household or account. From May to October 2015, there were forty-one (41) flagged transactions, and each flagged transaction took place within 1:57 minutes or less of the previous transaction. [19] A.R. at 94. The total amount flagged was $2,714.12. *Id.* Hayat Food Mart, II has one cash register, one point of sale device for EBT benefits, an adding machine, no shopping baskets or shopping carts for customer use, and a small service counter area to process orders. *Id.* Hayat Food Mart, II does not have optical scanning equipment, which quickly adds and separates food and non-food totals and moves the items along for bagging. *Id.* A normal purchase transaction at Hayat Food Mart, II would require the clerk to key in the cash register each individual food item for a final total cost, bag the items, and then process the total cost in the EBT device. *Id.* Further, during the store visit, the counter was documented as not only being small, but also cluttered. *See* [20] A.R. at 256.

The B2 scan measures rapid and repetitive transactions in a short period of time from the same household or account. *Id.* at 95. From May to October 2015, there were sixty-four (64) sets of violations completed by forty-four (44) different households. *Id.* The store visit report does not indicate any compelling reason for customers to consider Hayat Food Mart, II a first-choice destination to fulfill large purchases of food, or that customers would have made relatively large, multiple purchases at the store within twenty-four (24) hours. For example, B2 data shows that one household visited Hayat Food Mart, II three times within less than twenty (20) hours and spent a total of $217.15. *Id.* at 60. According to the store visit report, Hayat Food Mart does not compare in size and stock to very large supermarkets and/or super stores where the staple food supply is more plentiful. *Id.* at 95. Considering Hayat Food Mart II's stock, it is illogical for these households and other households to spend their benefits in the amounts shown where the quality, quantity, and selection of eligible food items is limited and prices are unquestionably incomparable. *Id.*

The third scan, also known as the F scan, flags excessively large purchases. *Id.* at 96. The average convenience store transaction in Mississippi during the review period was $13.78. *Id.* The largest purchase amount at Hayat Food Mart, II during the review period of May to October 2016 was $96.45. *Id.* Out of 8,006 total transactions conducted during the review period, 966 of those had an amount of and over $26.00. *Id.* Lack of transportation is not a sufficient explanation for these large transactions, because data shows that the households who shopped at Hayat Food Mart, II also shopped at full-line supermarkets and/or super stores in and around the Washington County area to purchase their grocery items. *Id.* This evidence begs the question: what could these households have possibly purchased from Hayat Food Mart, II in the way of legitimate

8

food items that they could not have purchased at the fifteen (15) supermarkets and/or super stores that they frequented over the review period? *Id.* at 98.

### 1. Plaintiff's explanation of the flagged transactions

In Plaintiff's response to the charge letter, he asserts that he has not engaged in any illegal activity. [20] A.R. at 162-63. As for the B1 scan, Plaintiff alleged that "the key stokes [sic] are repetitive and the transactions are recorded and ready for payment almost instantaneously which [sic] the conclusion of the previous transaction." *Id.* at 162. As for the B2 scan, Plaintiff asserted that "it is not unusual . . . to see the same customers on successive days or even multiple times on the same day." *Id.* As for the F scan, Plaintiff alleges that the large purchases are combinations of Hunt Brother Pizzas and Krispy Krunchy Chicken family packs. *Id.* However, hot food sales are ineligible for SNAP benefits purchases, so this argument does not bolster the Plaintiff's case. *Id.* at 171. Moreover, even if hot food items were eligible for SNAP benefits, photographs provided on page 171 of the administrative record show that "popular" hot food items have prices that end in .49, .89, .98, or .99. *Id.*; *see also* [20] A.R. at 252. Curiously, very few transactions during the review period end with those precise cents. *Id.* Thus, if the hot food were in fact purchased, which in itself would be illegal, it would appear that Plaintiff charged sales tax on it, which is also illegal, because sales tax is not allowed to be charged on items purchased with SNAP benefits.

Plaintiff contends that "other than a computer analysis of the timing of the redemption of the SNAP benefits program," the United States "has no witnesses indicating that the Plaintiff was trafficking in food stamps." [22] Response at 2. However, Plaintiff's position is not well taken because the Food Stamp Act expressly provides for disqualification from SNAP on "facts established through on-site investigations, inconsistent redemption data, *or* evidence established

9

through a transaction report under an electronic benefit transfer system." 7 U.S.C. § 2021(a)(2); *see also* 7 C.F.R. § 278.6(a) (emphasis added). This case is similar to *Kingway*, wherein the EBT "ALERT data was used to show a pattern of transactions, which was in turn used to identify the store as a candidate for closer examination. That examination was based on the store's own transaction history for a two-month period." *Kingway*, 545 F. Supp. 2d at 618. In this case, the data was collected over a six-month period, from May to October 2015, and is very similar to the data used in other cases upholding disqualification determinations. *See Id.* (citing *Kahin*, 101 F. Supp. 2d at 1303). Further, "since permanent disqualification is warranted on the 'first occasion' of coupon trafficking, it is Plaintiff's burden to raise material issues of fact as to each of the transactions set forth as suspicious by the FNS." *Kahin*, 101 F. Supp. 2d at 1303. As explained below, Plaintiff has failed to carry that burden.

Albeit that the court is not confined to the administrative record, Plaintiff has produced scarce facts in rebuttal to the instant summary judgment motion. In Plaintiff's affidavit attached to his response to the instant motion, Plaintiff states that "from the period of June 1, 2015 until August 31, 2015, the undersigned had purchased $36,828.08 in items for resale at his grocery store and, during this period of time, sold $66,252.05 worth of retail food sales, of which $51,332.61 were food stamp sales (SNAP benefits)." [22]-1 Affidavit at ¶ 3. Plaintiff also provides the court with a computer analysis, which is said to reveal "that in the period of which most of the deficiencies allegedly occurred, he did have sales of inventory and purchase of inventory in sufficient amounts to provide the sales of the food items." [22] Response at 3, [22]-1 Exhibit.

The court finds these arguments unpersuasive for several reasons. First, taking as true the computer analysis, Plaintiff has failed to meet his burden of a showing a genuine issue of

material fact by merely alleging that a computer analysis shows that he had $51,332.61 in food stamp sales from June 1, 2015 to August 31, 2015. Plaintiff's total SNAP transaction volume during the review period was $110,333.72, while the average convenience store's SNAP sales were a mere $12,372.25. *See* [20] A.R. at 270. Such a large transaction volume is implausible given the size of Plaintiff's store, and Plaintiff has failed to provide a sufficient explanation.

Second, the data does not cover the entirety of the relevant FNS review period, which was from May to October 2015. Third, and most importantly, Plaintiff fails to explain the data provided – it is merely conclusory. Plaintiff cites no examples and does not attempt to rebut the specific transactions the FNS flagged. In particular, Plaintiff wholly failed to address the 966 transactions that FNS identified as high-dollar purchases that evidence trafficking, or Plaintiff's SNAP sales being nearly 900% higher than the average convenience store in Mississippi. Further, no explanation was provided as to how Hayat Food Mart, II processed orders considerably faster than supermarkets typically process them, while the store only has one small checkout counter, no optical scanner, and none of the logistical tools such as conveyor belts, rotating bagging platforms or order separators that are routinely used in rapid throughput operations. *See id.* at 268.

Factually unsupported arguments do not create a genuine issue about the legitimacy of the irregular EBT transactions. *Rodriguez Grocery & Deli v. U.S. Dep't of Agric. Food and Nutrition Serv.*, 2011 WL 1838290, at *4 (D. Md. May 12, 2011); *see also Hajifarah v. United States,* 2011 WL 1575308, at *14-15 (D. Maine April 27, 2011) (transactions made "too rapidly to be credible" were not persuasively explained by plaintiff's "conjectural" argument that he or his wife would "calculate the total of transactions for customers in line and relay that amount to [the cashier]" when "not one ... witness[ ] provided details that ... helped corroborate [the

11

plaintiff's] story")). Plaintiff has presented the court with an affidavit that is wholly lacking in factual support – it contains mere conjectural arguments, such as the suggestion that most of his "customers call in their order," and "once they arrive, the order is ready and it is just a matter of processing the SNAP cards, a few seconds to process which would make the transaction almost instantaneous." [22]-1 at 5. These abstract arguments are similar to those made in *Hajifarah*, and a "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp*, 477 U.S. at 322.

2. **Plaintiff's allegation that summary judgment is improper due to the lack of discovery**

Finally, the court sees it fit to address Plaintiff's allegation that summary judgment is improper due to the lack of discovery. [22] Response at 2. A court can postpone ruling on a motion for summary judgment or allow time for additional discovery "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). A party seeking a continuance "must diligently pursue relevant discovery – the trial court need not aid non-movants who have occasioned their own predicament through sloth." *Wichita Falls Office Assocs. V. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir. 1992). The party seeking discovery "must set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (quoting *C.B. Trucking, Inc. v. Waste Mgmt, Inc.*, 137 F.3d 41, 44 (1st Cir. 1998). Plaintiff has not diligently pursued any discovery, nor has Plaintiff provided the court with any specified facts that he believes may be adduced that would influence the outcome of the instant motion.

The court finds that Plaintiff has failed to create a genuine issue of material fact as to how Hayat Food Mart, II could have achieved the SNAP redemptions during the review period by legitimate means. Analysis of the records reveal EBT transactions that establish clear and repetitive patters of unusual, irregular, and inexplicable activity for a convenience store such as Hayat Food Mart, II. Accordingly, the court finds that the FNS's determination that trafficking occurred was valid and summary judgment is granted on this issue.

**B. "Arbitrary and capricious" review of the sanction**

As for the propriety of the sanction, the government may impose a civil monetary penalty (CMP) in lieu of a permanent disqualification in cases where it determines by "substantial evidence" that: (1) the store had "an effective policy and program in effect to prevent violations;" and (2) the disqualification would cause demonstrated hardship to SNAP households because of the unavailability of comparable SNAP retailers in the area to meet their needs. 7 U.S.C. § 2021.

Evidence shows that Plaintiff did not request or submit any information and/or documentation stating an interest in receiving a CMP in lieu of permanent disqualification. [20] A.R. at 179. In light of Plaintiff's failure to submit evidence to the FNS demonstrating that it has established and implemented an effective compliance policy to prevent violations of the food stamp program, permanent disqualification is not arbitrary or capricious. *See Kingway*, 545 F. Supp. 2d at 618; *see also* 7 C.F.R. § 278.6(I). Accordingly, summary judgment is also granted on this issue.

## Conclusion

Based upon the foregoing reasons, the motion for summary judgment [17] is **GRANTED**.

**SO ORDERED** this, the 5th day of January, 2017.

>/s/ Jane M. Virden
>**UNITED STATES MAGISTRATE JUDGE**